We're happy to hear argument in our first case, No. 13-4771, United States v. Spinks. Good morning. Good morning. May it please the Court, thank you all, good morning. My name is John Duberstein. I'm with the Federal Defender's Office of the Middle District of North Carolina out of Greensboro. The case that we're talking about this morning, Mr. Spinks' case, I think is a very acute confluence of a bunch of different legal issues. And the two primary case law issues that come together in Mr. Spinks' case are Davis and Pepper. And I outlined the broad strokes of that in the brief, but I think some of the finer points are worth discussing in more detail, including the statutory and guidelines issues in his case, 3553A, 3553E, 5K1.1, and then some issues that are touched on in Pepper and in Davis, including basic due process and some more discretionary issues, and also the operation of a mandatory minimum sentencing scheme. And that's where I'll start, I guess. Davis, the Fourth Circuit case, is very similar to Mr. Spinks' case in many regards. The biggest difference, I think, is that Mr. Spinks' case was a drug conviction, mandatory minimum. Mr. Davis had a five-year mandatory minimum. One of the points of disagreement at the District Court, I think, was whether or not the operation of a mandatory minimum was at issue in Davis. And one of the distinctions made at the District Court level was that, in fact, there was no statutory mandatory minimum at play. But that's not true, is it? It's not true. And that's the point that I would like to make, I guess, is just there is a not less than five-year. But I don't know that the public defender or whoever was representing your client then made that point in the District Court. I was not clear. It was me, Your Honor. And I was not clear. I think it was just sort of a mistake that everybody made. The lawyers told the District Court that there was no mandatory minimum, and the District Court believed it. Right. It's hard to follow these lawyers. That's right. And I think the- It was everybody's mistake. It was everybody's mistake. Including the District Court's mistake. Including the District Court, and who ultimately gets to decide. And I think the operation of the mandatory minimum was only one factor. But for the court at that time, I think it was decisive. I'm not sure ultimately it's a decisive issue, given what Davis says. I mean, obviously, in retrospect, it is a mistake. The way that I view Davis and Mr. Spinks' case is this- I think it's a very neat- it's not formal. It's a very substantive legal concept. I sort of look at it as a trap door. The decision on whether or not to grant a 5K motion or a Rule 35 motion, I think both were granted in Mr. Davis' case. We're dealing with 5K 1.1 in this case. Well, doesn't that make a difference? I think it was a 35B motion in Davis. I'm not sure that it does, because I think the same analytical approach works for both. It's the same substantive action that's being done by the person who's getting the substantial assistance motion, whether it be Rule 35 or 3553E, and therefore 5K 1.1 before sentencing. And I think it's the same consideration as to- so the first decision that the court needs to make is whether or not to grant a substantial assistance motion. And I think that decision, from a defendant's point of view at least, is a very risky one, because there is this threshold decision on whether or not substantial assistance is merited. And that has nothing to do with where the ultimate sentence winds up. That is- I don't want to divert your argument, but isn't that a fiction? I don't think it is, Judge. You don't think it's a fiction? You really think a district judge, in deciding whether to grant a 5K 1 or 3553E, isn't at the same time thinking about what sentence I'm going to give this person? No, in that sense. Okay. I think there is a- they're obviously very closely related, but what I'm trying to- Your point is analytically they are two separate steps. Well, and it's- when a defendant decides to provide substantial assistance, for example, if his substantial assistance is extensive and he risks his life and sticks his neck out as far as he can, but it doesn't bear fruit, he gets nothing. And so there's this threshold matter of does it bear fruit, how much did it actually assist the government, versus the totality of the 3553A factors. And those don't come into play until it's already been decided that he should get substantial assistance. And so I think there is actually a door that you have to walk through, whether it's analytical or whether it's literal. And I think for the defendant it's quite literal. I think from the judge's point of view, that stuff may get collapsed more than it should in some cases. And, in fact, Judge Schroeder said to me, do you want to argue on the extent of the 35- I mean of the 5K 1.1 in terms of the 30 percent? That's what the government recommended. That's my question. Did you? And if you didn't, why didn't you? I did not because I thought 30 percent was fair as a representation of his- It's not as fair as 40 percent. Well, that's true. But I thought that extending it at 40 percent, I would have had to argue for his history and characteristics and his post-conviction rehabilitation under Pepper. And the court explicitly stated that it wasn't going to consider those factors. Why? That's what I'm not clear about. Why couldn't you just say, Judge, government's recommending 30 percent. And, by the way, I want to ask you about this whole 30 percent, 40 percent business, which I've never understood. Why couldn't you just say, Judge, we respect the government's recommendation and we embrace it, we thank the government for it, but we think his cooperation and assistance had a value of 40 percent? I just don't see why lawyers don't argue that. Your Honor, and- Maybe it's the culture of the district. Judge Davis, I think the culture of the district explains the 30 percent. That's a culture that I was introduced to. But does it explain why defense lawyers don't go against the 30 percent? No, occasionally I do argue for an increased percentage. In this particular case, he didn't testify at trial. It wasn't a case where he had done the utmost that I have seen a client do. And, frankly, I thought the prosecutor was being fair when they recommended the 30 percent. Where I had a problem was that- The prosecutor also waived a one-year rule or something, too, didn't he? Under the Simmons- Right. The Simmons- They did a lot of things for you. Absolutely. And none of that is at issue. And none of it was a complaint in any state. They probably did you some favors. The Department of Justice made a policy that enabled the Simmons cases to flow through where procedural issues would have held them up. No question. Sometimes. In some cases, yes. Someday we'll talk to the Department of Justice about their policy, which seems to vary from case to case. We've had many, many conversations on a very low level in my case. Well, ours is, I guess, a low level, too. The issue- His case came back on Simmons, and that it did is the reason why Peppers is important. But, you see, I think the language in 35B is different from the 3553E and 5K language. I mean, have you compared them to each other? I have, Your Honor, and they're not identical. No. I think 3553E, the limitation that's placed there, I think also reads very correctly, given the scope of the overall sentencing scheme, with a limitation on whether or not to grant. And that's the Davis-I mean, my argument in front of Judge Schroeder was not, frankly, very original. It was based on Davis. But that's the Davis holding, which is it limits what the judge can do in terms of whether or not to grant it. But if it limits everything that the judge can do in terms of setting a final sentence, no matter what the language of the statute- and I don't think the limiting language in 3553E is all that limiting, frankly. Well, it's more limiting than the language in 35B. I agree, Your Honor. And that's the difference. There's the rub. And then you come into Fourth Circuit precedent, which, for reasons I'm not really sure of, you don't discuss in your brief. I can address that, Your Honor, and I think- Well, I don't think it does. I think Hood, for example, was based on a 3582C case. And in that case, the statute expressly references guideline issues. And what the distinction was in Hood was- And 3553E and 5K1 are not guidelines? No, ma'am, I'm not saying they're not guideline issues. But 3582 expressly references that it uses the language, a guideline range. And that's where the court hung the logic in Hood and said, this is why we can't do this. And what Hood was ruling on was whether you started at the bottom end of the guideline range or the mandatory minimum. And we didn't challenge that in this case. We're fine with starting at the bottom end of the- What we're saying is, in determining that final sentence, once you make the departure, there's no reason to leave behind the entirety of 3553A. Those in 3553E actually expressly states that what you should do is go to the guidelines and all the policy statements. Well, the guidelines and all the policies- Are you trying to get us to create a circuit split? No, Your Honor, I'm not expressly trying to create a circuit split. But if we agree with you, don't we create a circuit split? Your Honor, I'm not sure any of the cases from the other circuits have been as clear as Davis or would be as clear as the position that I hope will be the court's position in this case. And that is, where you have someone who has post-conviction rehabilitation, and I think Pepper is absolutely clear that post-conviction rehabilitation is a factor that should be considered where it's appropriate. And a lot of the cases that would be a circuit split effectively state you can interpolate 3553A when you're doing a departure, but for some reason, some of those circuits have held, you can only do it when it's going downwards, effectively. And Pepper is on point on that issue, too. Pepper says, I think it borrows from the Second Circuit, but it actually reiterates the whole statement, this can't be an escalator that only goes up. It should go down, too. So, in other words, it can't just be to the defendant's detriment. But the Sixth Circuit explicitly said Pepper doesn't change Sixth Circuit law, right? Which case are you referring to, Judge Davis? I forget the name of the case, but... It's the Sixth Circuit case, it's post-Pepper. It's post-Pepper. Judge Ball, at this point... I would say Pepper does, I mean, I don't know, I haven't looked at the Sixth Circuit case in detail, but I think Pepper jives with Davis perfectly. I mean, if you put Pepper and Davis together, they can be read completely congruently and complementarily. And I think, actually, that prior Fourth Circuit precedent, I mean, it's arguable, I'm not making that argument, but I think it's arguable that hood and pillow are at least weakened by Davis. But I think they can be read in harmony. I don't think there's any... That we weaken hood and pillow by rendering Davis? No, I said I think you could make that argument. But we can't, one panel can't change another one. But I don't think they do. They can under our precedent. I agree, Your Honor, and I think... Davis didn't have any power to change them. I think it does not overrule them because they can be read in harmony. Davis couldn't overrule them. If Davis is contrary to them, they control. I understand, Judge King. I'm sorry, I apologize for misreading the question. I think what I'm responding to is the government's position that Davis did not overrule. That's not our... But Davis couldn't. But that was never... We can't change them, that's my point. Right, and that was never our position. Davis is different than them, they control. Exactly. Davis is on a different ground. Davis would be an outlier and we wouldn't be any precedent. And it's different because it doesn't involve the same statutes. It involves, it really involves Pepper and the 5K1.1. Pepper, if Pepper changes things, Pepper changes things. But if Davis, if you think this runs contrary to hood or something, that doesn't work here. No, Your Honor, I think it runs around hood. I think it doesn't treat the same issues as hood. It just doesn't have the same footing as hood. And Davis was distinguishing Clausen. It was a prior precedent from this Court. Also didn't overrule that. It said Clausen dealt with this expressly and said the weather question is different from the how much question. And I think that's really the crux of Davis. And that's the crux of Mr. Spinks' case. The weather question was never in doubt. The government recommended 30 percent. We agreed at 30 percent. We wanted to argue that because Mr. Spinks had spent a considerable amount of time in prison bettering himself, and he had an extensive record. It was not quite as long as Mr. Pepper. His case didn't go on for quite as long. And that's a fair argument, except that the 3553 factors all talk about the giving assistance. That's all they deal with. And then the statute says there's limited authority to impose a sentence below a statutory minimum. And the only rationale given for it in the statute or the guidelines is giving assistance. And you got that. But, Your Honor, I think – So you just want to ignore that language. No, Your Honor, I don't. And I think that language is the weather question. That's the – No. It's different kinds of weather. Whether you went down, it gives you an ability to go down from the mandatory minimum for substantial assistance. But it doesn't give you any other rationale for it. But it doesn't need another rationale because 3553A – Well, it says limited. It does. But it also – That, to me, says limited to that rationale. But the second clause also states that it should be imposed in conjunction with the guidelines. And the guidelines, for example, in 1B1.1 and 1B1.4, they incorporate the full panoply of factors. And there is also 18 U.S. Code 3661, which says, as a general matter, no interference should be made with the judge's ability to consider relevant factors in imposing the ultimate sentence. That doesn't speak – This was imposed under 5K11, right? Yes, ma'am. Every single thing that's talked about under 5K11 directly involves defendants' assistance. But the 5K1.1 language is non-exclusive. It says these are some factors to consider, but they are not limited to these factors. And I think if they were, you'd be creating a situation, especially in a statutory-mandatory-minimum case like this one, you'd be effectively eliminating judicial discretion in the ultimate sentence. I mean, the prosecutor winds up being the only person – Congress more or less wanted to eliminate judicial discretion when they created statutory-mandatory-minimum. That may not be a good idea. You may not think it's a good idea. Nobody in this courtroom may think it's a good idea. But unless they have a vote in Congress, this doesn't make sense. Well, Your Honor, I also think Congress fashioned the 3553A, and the Sentencing Commission was bid by Congress to fashion 1B1.1, 1B1.4. Congress wrote 3661. These are all overarching structural things. In every sentencing, the court is supposed to consider all of the relevant factors. 5K1.1 presents a non-exclusive list of factors to consider in granting a substantial assistance motion. The court can look at what the government says. They can say, look, Mr. Spinks, 30 percent, we don't think he deserves it. In granting a substantial assistance motion, true, but you want us to look at something that doesn't have anything to do with substantial assistance. No, Your Honor, I'm not arguing at the threshold question. I'm saying when the judge arrives at the final sentence. And in this case, Mr. Spinks' sentence was a mechanical calculation. It was 120 minus 30 percent. There was no consideration of the 3553A factors. There was no consideration of post-conviction rehabilitation, as in Pepper. And those precedents and that sentencing statute, I think, ought to be part of every decision when the court is fixing the final sentence, not just in the case where there's no substantial assistance. It actually winds up running counter to the statutory scheme, and that's Congress, too. So to read those in harmony, I think it shouldn't be so limited that the court can't exercise any discretion when it actually comes to the point of fixing the final sentence. You understand that that's not the position that's being espoused. It's not that the court can't have any discretion, but that the only thing that you can base it on when you have a mandatory minimum is substantial assistance. Yes, Your Honor, and I think that to Judge Davis' earlier question, though, that is, I mean, we may be splitting hairs here too much, but that is effectively no discretion. The court can say yes or no. It's a binary, and it's 30 percent or nothing. No, as Judge Davis has pointed out, it can give you different amounts for the substantial assistance. So yes or no, yes, you get all the time off. That's a whole lot different than yes, you get 20 percent. But if you're arguing for that position and you're, again, interpolating 3553A factors, you're effectively end round. I think that's less legally supportable a position in some ways than what I'm arguing for, which is the court then gets to consider who this defendant is, what their individual characteristics are, and the whole litany of Anglo-Saxon law that's supposed to be incorporated into 3553A and the sentencing guidelines, as they should in any sentencing. But you're trying to deal with that in a mandatory minimum case, and so you're giving credit to both parts of the legislation. And to give some teeth to mandatory minimum, which obviously Congress intended us to give some teeth to, this is sort of the rationale that's come out. Congress has told us, okay, this is a mandatory minimum, but you can take substantial assistance into effect to get beneath that. And I think Hood actually answers that question, Your Honor. It still anchors the decision to the mandatory minimum, while still allowing the court to consider the sentencing statutes when applying the final sentence. It's a 35B case. What's that? Never mind. Okay, go ahead. I guess your time is up. We'll talk to you in rebuttal, okay? Thank you. Thanks. Good morning. May it please the Court, my name is Harry Hobgood, and I represent the government in this matter. To first address a couple of questions that Your Honor has raised. The district court, in discussing whether Davis was a mandatory minimum case, did not say there was not a mandatory minimum sentence involved. What he was trying to say was it was not an issue in the decision itself. They're two different things. There was a 924C, which was a five-year mandatory consecutive sentence, but this court did not address the issue of whether and how a departure could be made. That was a mistake, wasn't it? I'm sorry, Your Honor? That was a mistake, was it not? On this court's behalf? Yeah. Induced by the government's failure to raise the issue. It did not raise the issue, and I don't think it was a limiting case. It was a matter of – But Davis clearly deviated from binding circuit precedent, didn't it? In permitting a substantial – permitting a departure below the – down to 36 months on that mandatory 60 months. I don't think so, Your Honor. No? It was really a question of limitation. If the court limits the downward departure, what factors can it employ? It was not a case if it exceeds or goes below the statutory minimum, what factors can it employ? They're two different things. This court used the language about the – there are no limitations under 35B on the extent of departure, but it was dealing with a case which limited departure, not expanded it. And I think that's what Spinks is doing here, is attempting to take Davis and stretch it beyond what was at issue there. So is Davis useful for any purpose? In other words, how would this court or a district judge apply Davis in light of the precedents that came before Davis? I don't know if it was Davis in one of the other cases, but the court gave the example in a 35B case, if a mass murderer was the defendant and the government requested a downward departure from any kind of statutory minimum, the court could then just address the heinousness of his crimes, the danger to the community, and so forth, and not grant that departure. But the court could do that without saying a word, and it's not even subject to appellate review. You're absolutely right. So what work is Davis doing? A judge's decision not to grant a substantial departure, substantial assistance departure, and the extent of that departure is not subject to appellate review. Do you agree? I agree. Right? I agree. So what work is all of that language in Davis doing about how a judge can limit, in other words, disagree with the government, when in fact every district judge can disagree with the government on a substantial departure, whether it's 35B, 5K1.1, or 3553E? But isn't the district court required to state its reasons for that departure? Not on a departure. A decision to depart is not subject to appellate review. The only thing that's subject to appellate review is a district court's apparent failure to recognize the authority to depart. But once a judge says, yeah, I could depart, the judge doesn't have to say another word in denying it or in granting it. Now, there is LEND, but that's not what happened here because the defendant said 30% is perfectly fine. And didn't object to it. And the judge could have stopped right there. And PEPR. One thing the Supreme Court said in PEPR on a remand, the law of the case doctrine does not apply to the amount of reduction for substantial assistance. The court can increase it or decrease it. Exactly. So the district court here could have, if the judge wanted to, it could have increased it to 35% when it came back. If he did not say he was doing so for the 3553A factor. Exactly. So what this case is about is what judges say, not what judges do. To some extent, Your Honor, I think you're absolutely correct. The curious thing about Davis, there's that footnote that says, we don't know if the 35B motion was based on assistance after the original sentencing or both before and after. But in fact, 35B, the plain language of 35B says you can only grant a 35B for substantial assistance after the sentencing. Correct. So what was going on there? I have no idea, Your Honor. I agree. I saw that footnote as well and was puzzled by it. But one thing is clear here. The government, as Judge King said, was very generous. We cut the defendant's sentence in half because of Simmons. You're talking about from what he got before? Originally. After the departure. I believe it was 164, 168 the first time. Now he's got 84. 84 this time. 84 now. Exactly half. Exactly half. And the district court, as far as the 3553A factors went, recognized them. He asked the defendant if he wanted to argue them. And there was no argument. Nothing was said. He acknowledged Pepper. And he said he would be receptive to any Pepper evidence. And he got none. At no point did the defendant ever say this is the post-sentencing rehabilitation that you should consider, Your Honor. There's nothing for him to consider. Now, could he have considered that? No. And hadn't he already said? Hadn't he already said Pepper was not relevant? Well, Pepper was not a mandatory minimum. Hadn't the district court already said Pepper is not? He couldn't use it to go below the statutory minimum. He acknowledged that he could give him above the statutory minimum and that he was considering Pepper in that regard. But once he hit the mandatory minimum, he could not use Pepper or 3553A to go below that, thanks to Congress. Well, you know, sort of let's leave aside the difference in the statutes. But what happened here, because there was a resentencing, you don't have a 35B situation to be sure. But you do have somebody coming back actually and being able to say, look at what my good behavior in prison, which is the same thing that they say in 35B cases. So it sort of has the atmospherics that you should be allowed to take that into account. But I guess your position is you're not. No, you can't. But as the district court said, you're still defined by 3553E. Well, how can you take it into account then? Because he could give more than 120 months. Well, I know, but his rehabilitation was good. So good rehabilitation, good conduct in prison doesn't help him, right? Even though we know in a Rule 35B situation it might. Realistically, it would not help him. Right. No, it would not. Even though he's in the same posture, except for the time in prison. And I don't think that this case really, Davis has anything to do with this case. It's very, very different. As you pointed out, it's a 35B case, not a 3553E. The statutory minimum there, the 924C, was not at issue. The statutory minimum is at issue here. When do you say not at issue? There was one. What was going to be determined by the sentence wasn't going to affect the statutory minimum? There's no discussion of whether the district court could go below that mandatory minimum or in what fashion. It was not a factor. See, the thing that, you know, we've given your colleague a hard time, so you can understand where the argument's going. But the thing that seems sort of unfair is that we've now created a rule where you can always go up, you can add on bad things, but you can never go down. And that seems very weird, you know? That doesn't seem like what our system of justice is about. But Congress has imposed these statutory limits and created the basis for going below them. And I'm afraid we're there. The thing about Davis, it didn't overrule Hood or Pillow, which are the two cases this panel relied on and Spinks won. And once again ‑‑ Judge King says it couldn't have overruled them. Over the limit. Well, you know, it's impossible. It can't be done. And even as Judge Schroeder said in this case, if you did follow Davis here the way Spinks wants us to, it would completely blow a hole in the statutory and mandatory minimums. They would become worthless and Hood and Pillow confirmed that they have validity. So that's why I argue that the law of the case doctrine applies here. Once again, Spinks wants you to overrule Hood and Pillow, and this panel can't do it. And there's no intervening change in the law in the array of money which would allow him to resurrect the same issue. Davis does not address the issues in this case and did not change the law. And again, a pillow of pepper really just does not apply. It's a guidelines variance case. It's not a case involving statutory and mandatory minimums. It has no application here. The Supreme Court did not discuss 3553E or 35B. They discussed 3553E but only to the extent they were saying in a remand the Court's not bound by the same percentage of reduction. And pepper was permissive. The Supreme Court merely said that a district court may consider post-conviction rehabilitation evidence. It didn't say it has to. Well, he would go with that. And also, I believe as Judge King pointed out, the Sixth Circuit in the Williams case, the pepper does not apply in cases like this. We agree with this. If you find an opponent there, do we create a circuit split? Yes, I would say we would. We would be out there by ourselves? Yes, sir. Yes, sir. All of the circuits are uniform. They're the only substantial assistance. How many are there? Ten plus the District of Columbia. Pardon? No. They have ruled on this issue. How many are there? You said all of them are uniform. On the 35th. How many are they all? I can't find an exception. I did not cite a Third Circuit case, but I don't believe they are. So you think the rest of them are? I think they're all in uniform, yes. They're all on your side? They're all post-pepper? How many of you are post-pepper? He says pepper is a big deal, so you give us the Supreme Court. How many of them are post-pepper? Well, pepper was 2011, so I would say some of the ones I've cited were not. Well, a lot of them. A string of cites you had in your brief was all pre-pepper, like five or six or seven. Yes. But that Sixth Circuit case is post-pepper. Yes. Is that the one you like, or is there more of them you like? That was the most obvious one, Your Honor. Is that the one that you'd sponsor? Yes, it is. That we give a lot of heed to? Yes, sir. I think it's a valid precedent. And when you look at the facts of pepper. It's a valid precedent. It's something, but it's another circuit. But they've analyzed it post-pepper. And Spinks has cited no cases that have applied pepper to its statutory mandatory minimum either. I think unless there are any further questions. Thank you very much. Thank you. I'll just reply briefly, sort of in order. I think the Court's already covered the precedent issue. I don't think any of the cases except for the Sixth Circuit case are post-pepper. And I don't think the circuits are uniform. I think a lot of those cases deal, it's like the difference between Hood and Davis. You say Sixth Circuit is the only one. I think it's the only one that I have seen that is. So if we created the circuit split, it would be a one-to-one split? At this point, yes. Okay. I don't think the other circuits have dealt with this on all fours. The cases vary widely in what exactly they are dealing with, whether it's a statutory mandatory minimum or not, or whether it is just a question of departure from 3553E or a Rule 35 case. The Court in Davis, I will point out, expressly reduced the mandatory minimum both times, under the 5K1.1 motion and under the Rule 35 motion. It was less than 60 months originally, and it was then reduced further. I think it was down to 36 months on the original 60-month sentence. And what reason did it give for the departure? For the original departure, it was both. It was that he gave it based on substantial assistance. He limited it based on the violence and his criminal record, I think, was the reason. But I'm trying to get you to focus in on how Davis actually helps you here, if we were to follow Davis. I think it helps because the judge considered other factors other than simply substantial assistance in arriving at that in both instances. That's what I'm distinguishing from what we're talking about. I'm going back to the original sentencing in Davis. Yes, sir. Did the court rely on anything other than substantial assistance? He did. The original sentence was 36 months on Count 1 and 50 months, which was 10 months below the mandatory minimum. And what reason did it give for the 50-month sentence? He said the court noted the defendant has been in some trouble before, and that weighs with me. It also considered that there was a victim in the case, the person who had the firearm pointed at him. This is a very serious offense. It was a violent crime. So that was part of the court's consideration in departing below the guidelines on the 60-month mandatory minimum sentence. He also reconsidered that information. In fact, I think they brought in a victim advocate to talk about the victim's current condition at Rule 35 stage. Weren't they both substantial assistance departures? Yes. He just allocated them between both counts. He reduced both counts. But I'm focused on the mandatory minimum count. Yes, Your Honor. And the mandatory minimum count was reduced. On substantial assistance, wasn't it? But as part of the consideration for the sentence, that's not reflected in the language in Davis. What it says is, in exchange for substantial cooperation, the government moved to reduce the sentence. The district court granted the request, but simultaneously expressed concern that the defendant's crime was violent in nature and thus deserving of substantial punishment. The court noted that the defendant has been, et cetera, what I just read. So no, I think the answer is the court considered both things, both the extraneous factors and the 5K1.1 factors that the court mentioned before, what I would call the non-exclusive list. And I think it's an illustration of why that's non-exclusive. And in this case, the escalator went up. And Mr. Spinks' argument is just, in his case, the escalator should go down. It's the same consideration, same legal analysis as this court approved in Davis. So is Davis inconsistent with Hood? I don't believe it is, no. Because I think Hood was on a different footing. Hood was not the same case. Hood was arguing that you had to do with the starting point. Yes, sir. But isn't the reasoning of Hood inconsistent with what the district judge did in Davis? I think the two cases can be read in harmony if you do what I was talking about before, which is this anchors it, Hood anchors it to the statutory mandatory minimum. It doesn't free the whole thing up and blow a hole in the floor. And Davis acknowledges that that also doesn't mean you slam the door on 3553A and the rest of the sentencing package. What were you just reading from? I was reading from U.S. v. Davis. What page? It's at? 192? I'm sorry. Yes, 192. Okay. Am I correct that in Davis the government made a specific recommendation? Yes, Your Honor. And in each instance, both at the original sentencing and at the 35B, the district court didn't give as much as the government was recommending? That's correct. Okay. And your point is in explaining why it wouldn't give as much as the government, the court took into account both times these extraneous factors, these non-substantial assistance factors. That's correct. It did what I think is appropriate in sentencing the individual. It took that individual into account. And your argument is that post Pepper, Pepper and Davis together, your argument is really clinches the deal and makes it clear that the court can consider other factors. I think that's right. 3553A factors. That's right, Judge Davis. There's no appeal of the sentence, the original sentence, the thing that's in front of us in Davis is only the 35B. Correct. Limitation. Right. So that we still have the – I mean, Davis would be a lot more helpful to you if it was straight up appeal. Yes, I guess that's right. But at the same time, the issues are so similar. The confluence of – But the statute, the authority is so different. No, I'm sorry. You and I have been through this before. Maybe we didn't finish that conversation. But I think that legal issues are so overlapping, and the ones that argue in favor of a more totality analysis by a judge are both congressionally mandated, sound policy, and it's what we do at the district court level. I mean, it's what's supposed to happen with an individual when they come in front of a judge. That's the whole reason for the sentencing guidelines. We want to prevent disparity, but we also want to take into consideration all the individual characteristics of that person and that person's crime. I mean, it cuts both ways. Thank you very much. Thank you. We will come down and greet the lawyers and then go directly to our next case.
judges: Diana Gribbon Motz, Robert B. King, Andre M. Davis